IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR ACOSTA, | : | |
| **Plaintiff,** | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| ODEIDA DALMASI, M.D. | : | |
| and | : | NO. ____-cv-_____-TJS |
| RAEPH LAUGHINGWELL, M.D. | : | |
| and | : | |
| SANDRA WEST, O.D. | : | |
| and | : | |
| LIJU MATHEW, FNP-BC | : | |
| and | : | |
| WARDEN SEAN MARLER | : | |
| and | : | |
| MEDICAL DIRECTOR KEVIN | : | |
| CASSANO | : | |
| and | : | |
| JOHN DOE MEDICAL PROVIDERS | : | |
| I-V | : | |
| and | : | |
| JOHN DOE ADMINISTRATORS | : | |
| I-V | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiff, Omar Acosta ("Mr. Acosta") by and through his attorneys, Gay & Chacker,

P.C., hereby files the following Complaint against defendants, Odeida Dalmasi, M.D.

("defendant Dalmasi"), Raeph Laughingwell, M.D. ("defendant Laughingwell"), Sandra West,

O.D. ("defendant West"), Liju Mathew, FNP-DC ("defendant "Mathew"), Warden Sean Marler

("defendant Marler"), Medical Director Kevin Cassano ("defendant Cassano"), John Doe

Medical Providers I-V, and John Doe Administrators I-V ("collectively defendants"):

## Parties

1.     Mr. Acosta is an adult individual residing at Philadelphia FDC, 700 Arch Street,

Philadelphia, PA 19106.

2.      At all times material hereto, defendant Dalmasi was a physician practicing medicine at 700 Arch Street, Philadelphia, PA 19106, was a treating physician of Mr. Acosta and was acting within the scope of his employment and/or agency with the United States Government Federal Bureau of Prisons.

3.      At all times material hereto, defendant Laughingwell was a physician practicing medicine at 700 Arch Street, Philadelphia, PA 19106, was a treating physician of Mr. Acosta and was acting within the scope of his employment and/or agency with the United States Government Federal Bureau of Prisons.

4.      At all times material hereto, defendant West was an optometrist practicing optometry at 700 Arch Street, Philadelphia, PA 19106, was a treating optometrist of Mr. Acosta and was acting within the scope of her employment and/or agency with the United States Government Federal Bureau of Prisons.

5.      At all times material hereto, defendant Mathew was a nurse practitioner practicing nursing at 700 Arch Street, Philadelphia, PA 19106, was a treating nurse practitioner of Mr. Acosta and was acting within the scope of his employment and/or agency with the United States Government Federal Bureau of Prisons.

6.      At all times material hereto, defendant Marler was the warden of the Philadelphia Detention Center and was acting within the scope of his employment and/or agency with the United States Government Federal Bureau of Prisons.

7.      At all times material hereto, defendant Cassano was the medical director of the Philadelphia Detention Center and was acting within the scope of his employment and/or agency with the United States Government Federal Bureau of Prisons.

8.      At all times material hereto, John Doe Medical Providers I-V were medical

2

providers at 700 Arch Street, Philadelphia, PA 191067 and were acting within the scope of their employment and/or agency with the United States Government Federal Bureau of Prisons.

9. At all times material hereto, John Doe Administrators I-V were administrators at 700 Arch Street, Philadelphia, PA 191067 and were acting within the scope of their employment and/or agency with the United States Government Federal Bureau of Prisons.

10. At all times material hereto, defendants were responsible for ensuring that inmates at the Philadelphia FDC, including Mr. Acosta, receive timely medical treatment to address their serious medical needs and/or for promptly scheduling appointments for medical consultations to address inmates' serious medical needs.

### Facts

11. On January 13, 2020, Mr. Acosta was evaluated by Sandra West, OD for decreased vision in his right eye.

12. Ms. West determined that Mr. Acosta had non-proliferative diabetic retinopathy.

13. Retinopathy is a condition that involves blockage of small blood vessels in the eye. In the early stages of retinopathy, new blood vessels do not form in the eye, which is referred to as non-proliferative retinopathy.

14. When the condition becomes more advanced, new blood vessels form in the eye that can cause bleeding, scar formation and pulling or stretching of the retina. This pulling or stretching can result in retinal detachment. This more advanced condition is referred to as proliferative retinopathy.

15. If not timely treated, non-proliferative retinopathy can lead to proliferative retinopathy which can in turn lead to retinal detachment and loss of vision.

16. Ms. West recommended that Mr. Acosta obtain an urgent consult with an offsite

3

Opthalmologist with a target date of January 24, 2020.

17.    As a result of the defendants' deliberate indifference to Mr. Acosta's serious medical needs, Mr. Acosta did not receive the ophthalmology consult he desperately needed until November 18, 2020.

18.    On that date Mr. Acosta was examined by Dr. Luca Zatreanu with Soll Eye.

19.    Dr. Zatreanu diagnosed Mr. Acosta with proliferative retinopathy due to diabetes mellitus and vitreous hemhorrage due to diabetes mellitus.

20.    Dr Zatreanu noted that Mr. Acosta never had retinal lasers or injections.  Dr. Zatreanu recommended regular anti-VEGF injections and retinal laser treatment in both eyes. Mr. Acosta was to return "ASAP" for the bilateral injections.

21.    On or about January 12, 2021, Mr. Acosta finally received the treatment he needed when he presented to Dr. Rebecca Soares with Wills Eye who performed injections in both eyes.

22.    On or about February 21, 2020, Mr. Acosta returned to Wills Eye and received laser treatment in his left eye.  Further treatment regarding his right eye, however, was deferred because the retina in his right eye had become detached and had to be surgically repaired.

23.    On or about March 5, 2021, Mr. Acosta underwent surgery to his right eye that included a 23-guage pars plana vitrectomy, endolaser, air-fluid exchange, membrane peel, right eye, and silicone oil 1000 centistoke.

24.    Despite ongoing attempts to salvage Mr. Acosta's vision, as a direct and proximate result of the defendants' deliberate indifference to Mr. Acosta's serious medical needs, Mr. Acosta suffered a retinal detachment in his right eye requiring surgical repair and loss of vision in both eyes.

25. The defendants were aware that non-proliferative diabetic retinopathy is serious medical condition that requires prompt treatment to prevent proliferative diabetic retinopathy, damage to the eye, and a loss of vision.

26. Despite the foregoing, the defendants intentionally and/or with reckless disregard, failed to ensure that Mr. Acosta receive prompt and timely medical treatment and/or failed to promptly schedule the medical consultation that Mr. Acosta desperately needed following his examination on January 13, 2020.

27. Despite the foregoing, the defendants failed to undertake prompt and appropriate medical care and attention and/or failed to ensure that prompt and appropriate medical care and attention was provided to Mr. Acosta, including scheduling of an offsite ophthalmology appointment on an urgent basis.

28. The knowing and deliberate failure of the defendants to provide immediate, appropriate medical care and attention increased the risk of harm to Mr. Acosta caused Mr. Acosta to suffer severe and permanent injury including but not limited to advancement of his retinopathy, bleeding and scarring of his eye, retinal detachment in his right eye, and loss of vision in both eyes.

29. The defendants were on notice of Mr. Acosta's urgent need for an ophthalmologic consultation and opthalmologic treatment and, with deliberate indifference, failed to take steps to ensure that he received the necessary care and treatment for his serious medical need.

30. At all times relevant to this Complaint, all individual defendants were deliberately indifferent to the serious medical needs of Mr. Acosta.

31. At all times relevant to this Complaint, the conduct of all defendants was intentional, willful, reckless, and grossly negligent with respect to Mr. Acosta's rights under

federal and state law.

32.    As a direct and proximate result of defendants' conduct, Mr. Acosta suffered severe and permanent harm and injuries, including but not limited to advancement of his retinopathy, bleeding and scarring of his eye, retinal detachment in his right eye, and loss of vision in both eyes.

33.    The actions and inactions of defendants increased the risk of harm and caused harm to Mr. Acosta.

34.    As a direct and proximate result of defendants' conduct, Mr. Acosta has suffered and will continue to suffer in the future great pain and suffering, embarrassment, humiliation, emotional distress, disfigurement, and loss of the enjoyment of life.

35.    As a direct and proximate result of defendants' conduct, Mr. Acosta has and will in the future continue to spend large sums of money for medicine and medical care in and about an effort to affect a cure for the aforesaid injuries.

36.    As a direct and proximate result of defendants' conduct, Mr. Acosta has and will in the future be unable to attend or perform his usual daily duties and occupations, all to his great detriment and loss.

37.    As a direct and proximate result of defendants' conduct, Mr. Acosta has and will be deprived in the future of earnings and earning capacity all to his great detriment and loss.

38.    Without any regard for Mr. Acosta's health and safety, the defendants ignored Mr. Acosta's medical condition and denied him medical treatment that he desperately needed.

39.    Without any regard for Mr. Acosta's health and safety, the defendants ignored Mr. Acosta's medical condition, and refused to transfer him to an outside medical facility for the ophthalmologic consultation and treatment that he desperately needed.

40.     As a direct and proximate result of the defendants' actions, Mr. Acosta was deprived of rights, privileges and immunities under the Eight Amendment of the United States Constitution and in particular the right to be free from cruel and unusual punishment and the right to be provided proper and adequate medical treatment.

## COUNT ONE
### Bivens Claims Against Defendants

41.     Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 40, inclusive, of his Complaint as if the same were set forth at length herein.

42.     Defendants were at all relevant times acting as employees or agents of the United States of America and were federal officers for purposes of claims asserted under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

43.     The defendants were deliberately indifferent to Mr. Acosta's serious medical needs and thereby violated Mr. Acosta's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

44.     As a direct result of the actions and inactions of the individual defendants, Mr. Acosta suffered the harm and damages set forth above.

## REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests:

1. Compensatory damages;

2. Punitive damages against defendants;

3. Reasonable attorneys' fees and costs;

4. Such other and further relief as may appear just and appropriate.

5. Plaintiff hereby demands a jury trial as to each count and each defendant.


*James A. Wells*

JAMES A. WELLS, ESQUIRE
GAY & CHACKER, P.C.
1731 Spring Garden Street
Philadelphia, PA  19130
(215) 567-7955
fax: (215) 567-6809
brian@gayandchacker.com
james@gayandchacker.com

**Attorneys for Plaintiff**
**Omar Acosta**

Date:  November 16, 2022

8